LAWRENCE L. SZABO (Cal. Bar No. 83974)
3608 Grand Avenue
Oakland, CA 94610
Tele: 510-834-4893
Fax: 510-834-9220
*szabo@sbcglobal.net*

HOOLE & KING
Lester A. Perry (Utah Bar No.2571)
4276 South Highland Drive
Salt Lake City, Utah 84124
Tele: 801-272-7556
Fax: 801-272-7557
*lap@hooleking.com*

Attorneys for Plaintiff, David Keyes

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID KEYES, on Behalf of Himself and All Others Similarly Situated, | No.: CV 07-03598 PJH |
| Plaintiff, | |
| vs. | |
| SECURITY CHECK, LLC; HALL & ASSOCIATES, P.L.L.C.; EDWARD R. HALL; and STEVEN B. ROTHSCHILD, | Date:<br>Time:<br>Place: |
| Defendants. | |

## MOTION FOR DEFAULT JUDGMENT

    Plaintiff David Keyes brings this Motion for Default Judgment against Defendant Stephen B. Rothschild.

    Plaintiffs filed this action against Defendant Steven B. Rothschild and the other named defendants on July 11, 2007, seeking damages for violation of the Fair Debt Collection Practices Act, 15 USC 1692 *et seq*. Plaintiff properly served Rothschild with the summons, complaint and related documents on September 26, 2007. Defendant did not file an answer or otherwise respond to the complaint.

    Plaintiff settled with the appearing defendants to the action, and a stipulation of dismissal of

against the appearing defendants was filed on March 12, 2008. The Court ordered the dismissal of the case against the appearing defendants on March 14, 2008. Plaintiff requested entry of the default of Defendant Steven B. Rothschild on March 14, 2008, whereupon the Clerk of Court entered Rothschild's default on March 21, 2008.

Plaintiff now requests entry of a default judgment for $17,146.75 against Defendant Steven B. Rothschild, consisting of an award of statutory damages of $3,000, costs of $362.25, and attorney's fees of $13,784.50.

### POINTS AND AUTHORITIES IS SUPPORT OF MOTION FOR ENTRY OF DEFAULT JUDGMENT

**I.    DEFENDANT IS LIABLE FOR STATUTORY DAMAGES, ATTORNEY'S FEES, AND COSTS**

**A. Entry of Default**

Once the clerk has entered a default, a party may seek entry of a default judgment against the defaulting party. *See* Fed.R.Civ.P. 55 ; *Conn-Selmer, Inc. v. Apex Indus., Inc.,* No. 04C0245, 2006 WL 752895, at *1 (E.D.Wis. Mar.20, 2006). *Cf. Keesh Constr., Inc. v. United States,* No. 1:02-CV-899, 2004 WL 2536840, at *1 n. 1 (S.D.Ohio Sept.28, 2004). Rule 55 of the Federal Rules of Civil Procedure provides that the clerk may enter a judgment by default when the plaintiff's claim is for a sum certain or for a sum which can be computed with certainty and the defendant has been defaulted for failure to appear and is neither an infant nor incompetent. *See* Fed.R.Civ.P. 55(b)(1); *Palladino v. General Crushed Stone Co.,* No. 96-CV-1355, 1997 WL 67792, at*1 (N.D.N.Y. Feb. 13, 1997). In all other cases, the party seeking a judgment by default must apply to the presiding district judge for entry of a default judgment. *See* Fed.R.Civ.P. 55 (b) (2).

Plaintiff requests entry of a judgment of default by the Court pursuant to Rule 55, which provides, in relevant part,

> [T]he party entitled to a judgment by default shall apply to the court therefor; but no judgment by default shall be entered against an infant or incompetent person unless represented in the action by a general guardian, committee, conservator, or other such representative who has appeared therein. If the party against whom judgment by default is sought has appeared in the action, the party ... shall be served with written notice of the application for

> judgment at least 3 days prior to the hearing on such application. If, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court may conduct such hearings or order such references as it deems necessary and proper ...

Fed.R.Civ.P. 55 (b) (2). Thus, to procure a default judgment under Rule 55(b)(2), a party must establish the following: (1) when and against what party the default was entered; (2) identification of the pleading as to which default was entered; (3) whether the defaulting party is an infant or incompetent person; (4) that the defendant is not in military services such that the Soldiers' and Sailors' Civil Relief Act of 1940 does not apply; and (5) that notice has been served on the defaulting party, if required by Rule 55(b)(2) . *See Elektra Entertainment Group Inc. v. Crawford,* 226 F.R.D. 388, 392 (C.D.Cal.2005).

       In this case, all of the requirements for entry of a default judgment under Rule 55(b)(2) are satisfied. The record discloses that, a default was entered against Defendant on March 21, 2008. Attached as Exhibit "A" to the Declaration of Lawrence L. Szabo in support of Plaintiff's request for entry of a default judgment is the pleading as to which default was entered.

       The uncontroverted declaration of Lawrence L. Szabo states that Plaintiffs have no reason to believe Defendant is either an infant or incompetent and that, after searching public military or military locator databases, Plaintiffs have discovered no evidence that Defendant is serving in the military ("Declaration of Lawrence L. Szabo In Support of Motion for Default Judgment", ¶ 5). Because Defendant has never entered an appearance in this action, the notice requirement of Rule 55(b)(2) does not apply.

       Therefore, Plaintiffs have fully complied with the procedure for obtaining a judgment of default in this case. *See Disney Enters. v. Farmer,* 427 F.Supp.2d 807, 815 & n. 5 (E.D.Tenn.2006) (finding on similar evidence that the procedural requirements for entry of a default judgment under Rule 55(b)(2) were satisfied). *Cf. Elektra Entertainment Group, Inc. v. Bryant,* No. CV 03-6381GAF(JTLX), 2004 WL 783123, at *3 (C.D.Cal. Feb. 13, 2004).

       **B. Entry of Default Judgment**

       The entry of a default judgment under Rule 55(b)(2) of the Federal Rules of Civil Procedure is committed to the sound discretion of the court. *See Enron Oil Corp. v. Diakuhara,* 10 F.3d 90, 95 (2d Cir. 1993). In determining whether a default judgment is warranted, the court may consider a variety of factors, including, *inter alia,* the amount of money involved, whether the default is largely technical, whether the grounds for default are clearly established, and whether the default

was caused by a good faith mistake or excusable neglect. *See* 10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2685 (3d ed. 1998); *Peryea v. Carter's Trucking & Blacktopping, Inc.,* No. 97-cv-461, 1998 WL 743713, at *1 (N.D.N.Y. Oct. 15, 1998) (applying factors).

In this case, each of the above-referenced factors militates in favor of the entry of a default judgment. The amount of money at stake is small, the default is clearly established and is more than a technicality. In light of the defendants' failure to make any appearance in this action in spite of ample notice, the default is not the result of excusable neglect. Thus, the entry of a default judgment is appropriate.

"[A] party's default is deemed to constitute a concession of all well pleaded allegations of liability." *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.,* 973 F.2d 155, 158 (2d Cir. 1992); *see Transatlantic Marine Claims Agency, Inc. v. ACE Shipping Corp.,* 109 F.3d 105, 108 (2d Cir. 1997) ("It is, of course, ancient learning that a default judgment deems all the well-pleaded allegations in the pleadings to be admitted.").

Accordingly, the court should find the following: (1) that Rothschild is a "debt collector" as that term is used in the FDCPA; (2) that Rothschild misrepresented the status of Plaintiff's debt in violation of 15 U.S.C. § 1692e(2) when he sent a collection letter to Plaintiff which did not indicate the amount of the debt; (3) that Rothschild misrepresented the status of the debt (4) that defendant Rothschild used false and deceptive means to collect on a debt in violation of 15 U.S.C. § 1692e(10).

**C. Damages.**

"While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages." *Greyhound Exhibitgroup,* 973 F.2d at 158. Therefore, even upon default, a court may not rubber-stamp the non-defaulting party's damages calculation, but rather must ensure that there is a basis for the damages that are sought. *See Credit Lyonnais Sec. (USA), Inc. v. Alcantara,* 183 F.3d 151, 155 (2d Cir. 1999). To award damages, it is not necessary for a court to hold a hearing; instead, a court may rely upon affidavits and documentary evidence. *See Fustok v. ContiCommodity Servs., Inc.,* 873 F.2d 38, 40 (2d Cir. 1989); *Action S.A. v. Marc Rich & Co., Inc.,* 951 F.2d 504, 508 (2d Cir. 1991) (Rule 55(b)(2) "allows but does not require the district judge to conduct a hearing.").

**1. Statutory Damages.** The FDCPA provides that, in addition to actual damages (which Keyes does not seek), "any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to . . . such additional damages as the court may allow, but not exceeding $1,000." 15 U.S.C. § 1692k(a). "The

decision on whether to award 'additional damages' and on the size of any such award is committed to the sound discretion of the district court." *Clomon v. Jackson,* 988 F.2d 1314, 1322 (2d Cir. 1993). In exercising this discretion, the court should consider "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, the extent to which such noncompliance was intentional, and other relevant factors . . . ." *Id.* (citing 15 U.S.C. § 1692k(b)).

In this case, defendant Rothschild violated the FDCPA every time he sent a form collection letter to plaintiff and other debtors . Additionally, although there is no evidence of intent, the nature of the defendants' noncompliance is relatively egregious: Rothschild misrepresented the amount of the debt in a attempt to induce the Plaintiff and others to pay more than they were legally obligated to pay.

Accordingly, in consideration of the frequency and nature of the noncompliance, the court should award the full amount of "additional damages" available under the statute: $1,000 per defendant. The statute provides, in part, that "any debt collector . . . is liable" for additional damages not to exceed $1,000. 15 U.S.C. §1692k(a). One court has held that the FDCPA limits the total recovery of additional damages to $1,000. *See Dowling v. Kucker Kraus & Bruh, LLP,* No. 99-cv-11958, 2005 WL 1337442, at *3 n 3 (S.D.N.Y. Jun. 6, 2005). However, by its terms, the statute does not impose such limitations. The statute casts its limitation on damages not in terms of the plaintiff's recovery, but in terms of the defendant's liability. Thus, in the case of multiple defendants, each may be liable for additional damages of up to $1,000. *See Ganske v. Checkrite, Ltd.,* No. 96-cv-0541, 1997 WL 33810208, at *5 (W.D. Wis. Jan. 6, 1997). Rothschild is therefore individually liable for $ 3,000 in damages.

**2. Attorney's Fees and Costs**

Pursuant to 15 U.S.C. § 1692k(a)(3), a prevailing plaintiff is entitled to the costs of his or her FDCPA action, as well as recovery of his or her attorney's fees. *See Jacobson v. Healthcare Fin. Servs., Inc.*, No. 06-cv-3147, 2008 WL 383060, at *8 (2d Cir. Feb. 14, 2008) ("The FDCPA provides for fee-shifting as a matter of course to successful plaintiffs . . . .") (publication pending). In the Ninth Circuit, the starting point for determining reasonable fees is the calculation of the "lodestar," which is obtained by multiplying the number of hours reasonably expended on litigation by a reasonable hourly rate. *See Jordan v. Multnomah County, 815 F.2d 1258, 1262 (9th Cir. 1987),* (citing *Hensley v. Eckerhart, 461 U.S. 424, 76 L. Ed. 2d 40, 103 S. Ct. 1933 (1983)), Friend v. Kolodzieczak,* 72 F.3d 1386, 1389 (9th Cir. 1995).

## II. PLAINTIFF SHOULD BE AWARDED HIS REASONABLE ATTORNEYS' FEES BASED ON A LODESTAR CALCULATION

The Fair Debt Collection Practices Act requires the payment of costs and reasonable attorney's fees to a successful consumer.

> . . . any debt collector who fails to comply with any provision of this subchapter . . . is liable to such person in an amount equal to the sum of--[actual damages] [statutory damages] and (3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court. 15 U.S.C. §1692k(a)(3).

In litigation pursuant to the Fair Debt Collection Practices Act, the Second Circuit stated "the award of attorney's fees to plaintiffs for a debt collector's violation of "any provision" of the FDCPA is mandatory" *Pipiles v. Credit Bureau of Lockport, Inc.*, 886 F.2d 22, 28 (2d Cir. 1989), *citing Emanuel v. American Credit Exchange*, 870 F.2d 805, 809 (2d Cir. 1989). "Under the Fair Debt Collection Practices Act ("FDCPA"), the prevailing plaintiff is entitled to `a reasonable attorney's fee as determined by the court.' 15 U.S.C. §1692k(a)(3). Such an award is mandatory under the FDCPA." *Edwards v. National Business Factors, Inc.*, 897 F.Supp. 458, 459 (D.Nev. 1995) (citations omitted). As the prevailing party in this case, Ms. Johnson is entitled to an award of costs and reasonable attorney's fees. *Thorpe v. Collection Information Bureau, Inc.*, 963 F.Supp. 1172, 1174 (S.D.Fla. 1996). Defendant does not dispute plaintiff's entitlement to attorneys' fees and costs. The only dispute is as to the amount.

The U.S. Supreme Court has explained the calculation for an award of attorney's fees:

> The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. The calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services. *Hensley v. Eckerhart*, 461 U.S. 424, 433; 103 S. Ct. 1933, 1939; 76 L. Ed. 2d 40 (1983).

In this Circuit, the starting point for determining reasonable fees is the calculation of the "lodestar," which is obtained by multiplying the number of hours reasonably expended on litigation by a reasonable hourly rate. *See Jordan v. Multnomah County, 815 F.2d 1258, 1262 (9th Cir. 1987),* (citing *Hensley v. Eckerhart, 461 U.S. 424, 76 L. Ed. 2d 40, 103 S. Ct. 1933 (1983)), Friend v. Kolodzieczak*, 72 F.3d 1386, 1389 (9th Cir. 1995). In determining a reasonable number of hours,

the Court must review time records to determine whether the hours claimed by the applicant are adequately documented and whether any of the hours were unnecessary, duplicative or excessive. *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986), *reh'g denied, amended on other grounds*, 808 F.2d 1373 (9th Cir. 1987). To determine a reasonable rate for each attorney, the Court must look to the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation. *Id. at 1210-11*.

In calculating the lodestar, the Court should consider any applicable factors listed in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67 (9th Cir. 1975), cert. denied 425 U.S. 951, 48 L. Ed. 2d 195, 96 S. Ct. 1726 (1976), that are relevant. *Jordan v. Multnomah County*, *supra*, 815 F.2d at 1264 n.11.[1]

*Kerr* considered the following factors in calculating the "lodestar": (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skills requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

### III. UNDER THE LODESTAR METHOD PLAINTIFF'S COUNSEL ARE ENTITLED TO FULL COMPENSATION FOR THEIR WORK IN THIS LITIGATION

The U.S. Supreme Court has stated: "The statute and legislative history establish that `reasonable fees' under section 1988 are to be calculated according to the prevailing market rates in

---

[1]. The *Kerr* factors used for determining reasonable fees are: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skills requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases

the relevant community, regardless of whether plaintiff is represented by private or non-profit counsel." *Blum v. Stenson, supra*, 465 U.S. at 895, 104 S. Ct. at 1547 (footnote omitted)." In order to encourage able counsel to undertake FDCPA cases, as Congress intended, it is necessary that counsel be awarded fees commensurate with those which they could obtain by taking other types of cases . . . . Paying counsel in FDCPA cases at rates lower than those they can obtain in the marketplace is inconsistent with the congressional desire to enforce the FDCPA through private actions, and therefore misapplies the law." *Tolentino v. Friedman*, 46 F.3d 645, 652-653 (7th Cir. 1995). Following the lodestar method, Plaintiff's counsel are entitled to a substantial award of attorneys' fees.

Lawrence L. Szabo worked a total of 45.10 hours at a rate of $300 per hour a total of $!3,530. His co-counsel, Lester Perry, worked a total of 21.3 hours at a rate of $400.00, a total of $8,555.24. Plaitff also expended costs of $362,25. (Declaration of Lawrence l. Szabo, Exhibits B and C). The requested hourly rate is reasonable, and is in line with approved rates in other recent FDCPA cases. *See Baruch v. Healthcare Receivable Mgmt., Inc.,* No. 05-cv-5392, 2007 WL 3232090, at *5 (E.D.N.Y. Oct. 30, 2007) ($350 per hour); *Fontana v. C. Barry & Assocs., LLC,* No. 06-cv-359, 2007 WL 2580490, at *3 (W.D.N.Y. Sept. 4, 2007) ($200 per hour); *Mahon v. GC Servs. Ltd. P'Ship,* No. 07-cv-44, 2007 WL 1879697, at *2 (W.D.N.Y. Jun. 28, 2007) ($200 per hour); *Dowling v. Kucker Kraus & Bruh, LLP,* No. 99-cv-11958, 2005 WL 1337442, at *8 (S.D.N.Y. Jun. 6, 2005) ($200 per hour); *Pinkham v. Prof'l Claims Bureau, Inc.,* 367 F. Supp. 2d 338, 340 (E.D.N.Y. 2005) ($250 per hour). Additionally, the attorneys did not spend an excessive amount of time on the tasks they performed. Accordingly, the court should award the attorney's fees and costs of $27,784.50, less payment received of $14,000.00, for a total of $13,784.50.

WHEREFORE, plaintiff DAVID KEYES requests that this Court enter judgment in the amount of $16,784.50 against STEVEN B. ROTHSCHILD, pursuant to Rule 55(a).

Dated: May 15, 2008                    /s/
                                       LAWRENCE L. SZABO
                                       Attorney for Plaintiff, DAVID KEYES